In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2790

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TIMOTHY B. STOKES,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 98-CR-30175-WLB--William L. Beatty, Judge.

Argued January 20, 2000--Decided May 2, 2000

Before COFFEY, MANION and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.  A federal grand jury
returned a four-count indictment against
Defendant-Appellant Timothy Stokes ("Stokes")
charging him in Count one with distributing
cocaine base, in Count two with possessing with
intent to distribute cocaine base, in Count three
with using a firearm during and in relation to a
drug-trafficking offense, and in Count four with
possessing a firearm as a felon. The jury
returned a guilty verdict on all four counts and
the court sentenced the defendant to 145 months
on Counts one and two, to be served concurrently
and concurrent with each other, a consecutive 60
month term on Count three and a concurrent 120
month term on Count 4, for a total of 205 months'
imprisonment followed by eight years' supervised
release. Stokes appealed, challenging the
district court's denial of his motion to sever
the felon in possession of a firearm count and
the two-level upward adjustment for obstruction
of justice. We AFFIRM.

I.  BACKGROUND
     In October 1998, a confidential informant and
an undercover agent for the Metropolitan
Enforcement Group of Southwestern Illinois
arranged a series of crack transactions with
Stokes in East St. Louis, Illinois. On October 6,
with a surveillance team nearby, the undercover

agent and the confidential informant met the defendant at the East St. Louis, Illinois residence of the informant. During this meeting at the informant's residence, Stokes delivered 5.3 grams of cocaine base (also referred to as crack) in exchange for $350./1 They met again the following day and Stokes sold the undercover agent approximately 28.2 grams of purported crack for $900./2 The undercover officer was unsuccessful in arranging further meetings due to the defendant's growing suspicions that he was a law enforcement officer.

Stokes contacted the informant again and they agreed to meet at the informant's home, but not only for another drug sale; Stokes wanted to trade his .380 caliber semi-automatic weapon and a quantity of crack cocaine for a 9 millimeter pistol. Stokes was arrested on his arrival by officers from the Illinois State Police and the Bureau of Alcohol, Tobacco and Firearms. During the search incident to Stokes' arrest, a loaded .380 caliber Browning pistol was found concealed in his pants and .2 gram of crack was discovered in his pants pocket./3

Prior to trial, Stokes moved to have Count four, the felon in possession of a firearm charge, severed and tried separately from the other counts of the indictment, arguing that inclusion of the felon in possession count would allow the jury to consider otherwise inadmissible evidence regarding his criminal history. At the conclusion of a pre-trial hearing, the trial judge denied the defendant's motion to sever, ruling that joinder was appropriate and that the charges involved were routinely tried together. The judge also suggested that the defendant could stipulate, as is typically done, to the prior felony convictions and thereby preclude testimony regarding the nature of his convictions.

During the trial, the defendant moved to exclude the arresting officer's testimony recounting the statements made at the time of his arrest that were derogatory to the police,/4 arguing that the statements would cause undue prejudice under Federal Rule of Evidence 403 and furthermore, that Miranda warnings were not given. The judge held an in camera suppression hearing to determine the probative nature of the comments and also whether a Miranda warning was in fact given. The arresting officer testified unequivocally that he had read Stokes his Miranda warnings at the time of arrest. In spite of this testimony, Stokes flatly denied under oath that he was given the warnings. At the conclusion of the hearing, the trial judge found that the arresting officer's testimony was more credible, and that Miranda warnings were in fact given, but

did agree to exclude the defendant's derogatory statements on Rule 403 grounds.

The jury returned a verdict of guilty against Stokes on all four counts. At sentencing, the court found that the defendant committed perjury by testifying during the suppression hearing that he had not received his Miranda warnings and applied a two-level upward adjustment to his base offense level for obstruction of justice under U.S.S.G. sec. 3C1.1. The defendant appeals, challenging the court's denial of his motion to sever the felon in possession of a firearm count and the court's imposition of a two-level upward adjustment for obstruction of justice.

II.  ISSUES

On appeal, we consider: (1) whether the district abused its discretion when it refused to sever the felon in possession of a firearm count; and (2) whether the court clearly erred by assessing an obstruction of justice adjustment.

III.  DISCUSSION

A.  Defendant's Motion to Sever

The defendant essentially argues that the court's denial of his motion to sever the felon in possession of a firearm count was prejudicial because the jury became aware of his prior felony record./5 The decision to grant or deny a motion for severance is "left to the sound discretion of the trial court; we review only for abuse of discretion." United States v. Dixon, 184 F.3d 643, 645 (7th Cir. 1999). Rule 14 of the Federal Rules of Criminal Procedure provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed. R. Crim. Proc. 14.

At the outset, we note that drug trafficking and firearm counts are presumptively properly joined because "[p]ossession of firearms and drug trafficking are closely related." United States v. Pigee, 197 F.3d 879, 891 (7th Cir. 1999). This Court has noted that "where firearms have been discovered along with evidence of a defendant's drug trafficking, joinder of firearms and weapons charges has been approved due to the natural inferences that may be drawn from the contemporaneous possession of guns and drugs or

drug paraphernalia: the firearm is an indication of drug activity, and participation in drug trafficking supplies a motive for having the gun." United States v. Hubbard, 61 F.3d 1261, 1270 (7th Cir. 1995). Because "weapons are 'tools of the trade' of drug dealers," United States v. Cooper, 19 F.3d 1154, 1163 (7th Cir. 1994), and "all of the violations charged in the indictment occurred at the same . . . place, and clearly constituted 'a series of acts,'" Pigee, 197 F.3d at 891, we agree that Stokes' counts were properly joined under Fed. R. Crim. P. 8(a).

Moreover, courts also have a strong interest in favor of joinder of offenses; in particular, joinder of offenses reduces the waste of precious judicial and prosecutorial time in the already overburdened federal judicial system and reduces the burdens on witnesses from testifying at multiple trials. See United States v. Blassingame, 197 F.3d 271, 286 (7th Cir. 1999); United States v. Briscoe, 896 F.2d 1476, 1516-17 (7th Cir. 1990). See generally United States v. Lane, 474 U.S. 438, 449 (1986) (citing the prudent use of prosecutorial and judicial resources as among the reasons supporting joinder).

Returning to Stokes' specific challenge of the court's denial of his motion to sever the felon in possession of a firearm count, to succeed on appeal, Stokes bears the heavy burden of demonstrating that he was prejudiced by the denial of severance. See Blassingame, 197 F.3d at 286. In challenging the court's denial, it is not enough that Stokes establishes that "a separate trial would offer him a better chance of acquittal." United States v. Cyprian, 23 F.3d 1189, 1194 (7th Cir. 1994). Rather, he "must establish that he suffered actual prejudice" from the denial of the motion, see United States v. Marshall, 75 F.3d 1097, 1105 (7th Cir. 1996), by establishing that absent the granting of the severance motion, he was unable to obtain a fair trial. See United States v. Magana, 118 F.3d 1173, 1186 (7th Cir. 1997).

We are not convinced that Stokes suffered any prejudice from the admission of his prior felony record in relation to the felon in possession count because the trial judge allowed the defendant to stipulate to his prior felony convictions in language that was sanitized of the words "felon" or "felony," as well as the details of his crimes. Indeed, the stipulation that the defendant and the government agreed upon stated that "prior to November 10, 1998, the defendant had been convicted of a crime punishable by a term of imprisonment of more than one year."

Moreover, the judge further attempted to insulate the defendant from any prejudice arising from his prior felony convictions by properly instructing the jury at the close of trial that:

During the defendant's testimony you heard evidence that the defendant has been convicted of crimes. You may consider this evidence in deciding whether the defendant's testimony is truthful in whole, part or not at all. You may also consider this evidence on the question of whether the defendant has committed the offense of unlawful possession of a firearm as charged in Count 4. You may not consider evidence of the defendant's prior conviction for any other purposes. With the sole exception of Count 4, a conviction of another crime is not evidence of the defendant's guilt of any other crime for which the defendant is now charged.

. . .

The defendant has stipulated that he had been convicted of a crime punishable by a term of imprisonment of more than one year. You may consider this evidence only on the question of whether the defendant has committed the offense of unlawful possession of a firearm as charged in Count 4. You should consider this stipulation only for that limited purpose.
(emphasis added). It is clear from our review of the record that the trial judge properly instructed the jury to consider Stokes' criminal history for the sole and limited purpose of the felon in possession of a firearm count. Indeed, "the jury was instructed to consider each count and the relating evidence separately; there [is] no reason to suppose that it would disregard this mandate." United States v. Coleman, 22 F.3d 126, 135 (7th Cir. 1994) (citation omitted); see also United States v. Linwood, 142 F.3d 418, 426 (7th Cir. 1998) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely [to] the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instruction given them."); United States v. Stillo, 57 F.3d 553, 557 (7th Cir. 1995) (holding that a criminal defendant "must rebut the dual presumption that a jury will (1) capably sort through the evidence and (2) follow limiting instructions from the court") (quotation omitted).

Furthermore, the defendant's allegation of prejudice must also fail because the defendant took the stand in his own defense, thereby opening himself up to the admission of his prior felony convictions for purposes of attacking his credibility under Federal Rule of Evidence 609.

See also United States v. Hickok, 77 F.3d 992, 1007 (7th Cir. 1996) ("However, the law is clear that when a defendant 'decide[s] to take the stand and tell the jury a story,' he does so at his own risk . . . .") (alteration in original). Thus, regardless of the felon in possession of a firearm count, Stokes' criminal history was directly probative of his truthfulness as a witness and the weight that should be afforded to his testimony by the jury. And lastly, as the trial judge recognized, we routinely try drug trafficking counts together with a felon in possession of a firearm count. See, e.g., United States v. Smallwood, 188 F.3d 905, 910 (7th Cir. 1999); United States v. Mancillas, 183 F.3d 682, 686 (7th Cir. 1999); United States v. Johnson, 127 F.3d 625, 627 (7th Cir. 1997). For all these reasons, we conclude that Stokes failed to "establish that he suffered actual prejudice" from the court's refusal to sever his felon in possession of a firearm count from the drug trafficking counts. See Marshall, 75 F.3d at 1105. Accordingly, we hold that the judge did not abuse his discretion by denying the defendant's motion for severance.


   B.   Adjustment for Obstruction of Justice

      Stokes also claims that the court erred when it assessed an obstruction of justice adjustment based on what the court classified as his perjurious testimony that he did not receive his Miranda warnings because it was neither material nor made with the intent to interfere with the proceedings. We review a sentencing court's factual findings on the issue of obstruction of justice for clear error. See United States v. Branch, 195 F.3d 928, 935 (7th Cir. 1999). Factual findings by a sentencing court will be overturned only if this Court is left with "a definite and firm conviction that a mistake has been committed. . . . Where there are two permissive views of the evidence, the fact finder's choice between them cannot be clearly erroneous." United States v. Swanquist, 161 F.3d 1064, 1077 (7th Cir. 1998) (quotations omitted).

Whether [Stokes] obstructed justice for purposes of sec. 3C1.1 (i.e., whether he committed perjury) is a factual determination that enjoys a presumption of correctness under the clearly erroneous standard. United States v. Delgado, 936 F.2d 303, 306 (7th Cir. 1991), cert. denied, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992); Hassan, 927 F.2d at 309; Brown, 900 F.2d at 1103. We fully recognize that the district judge was "in the best position to evaluate [Stokes'] truthfulness," United States v. Easley, 977 F.2d 283, 286 (7th Cir. 1992), and we will not disturb

[Stokes'] sentence unless we are firmly convinced that the sentencing judge was mistaken when he determined that [Stokes] committed perjury.

United States v. Hickok, 77 F.3d 992, 1007 (7th Cir. 1996)

Here, the sentencing judge applied the obstruction of justice adjustment because he found "that the defendant committed perjury when he [testified at the suppression hearing] that he was not Mirandized." Although Stokes' counsel attempted to assuage the sentencing judge by arguing that her client may have been "innocently" mistaken in his assertion that he was not Mirandized due to "a lot of confusion [and noise] there and that he didn't recall," the judge responded,

The Miranda testimony by this particular police officer I remember. Not the nitty-gritty details but I remember the police officer was very clear about having Mirandized him. And I remember his testimony because he [Stokes] was insisting that he wasn't, which is kind of unusual. So I think that's the thing that concerns me. And granted . . . there can be some shades of what was exactly said, things of that type. But you know he was either Mirandized or he wasn't Mirandized. And it's difficult for me--and the question of being Mirandized in this case was very significant, because at the time those questions came up . . . it was in the frame work [sic] of a Motion to Suppress this other testimony. It's difficult for me to believe that . . . the noise you're talking about is going to befuddle his mind. That's the thing I'm concerned about.

. . .

Well, if he was confused and if there was a lot of noise and if he doesn't know then he should have said I don't really remember whether he was or not. But he didn't say that. He said no, I was not.

Section 3C1.1 of the sentencing guidelines instructs the sentencing court to increase a defendant's base offense level by two if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing" of the offense. U.S.S.G. sec. 3C1.1. Under the guidelines, obstruction of justice includes the commission of perjury as well as the act of "providing materially false information to a judge or magistrate." U.S.S.G. sec. 3C1.1, cmt. (n.4(b), (f)).

In determining what constitutes perjury, courts have previously relied upon the definition that has gained general acceptance and common understanding under the criminal perjury statute, 18 U.S.C. sec. 1621: "A witness testifying under oath or affirmation violates this statute if he or she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993); see also 18 U.S.C. sec. 1621(1).

From our review of the proceedings, we are convinced that the record more than adequately supports the sentencing judge's finding that Stokes willfully provided perjurious testimony that was material to the proceedings by testifying at the suppression hearing that he did not receive his Miranda warnings during his arrest. We come to this conclusion, in part, because of our well-established preference to defer to the trial judge on issues relating to the credibility of witnesses who testified before him:

The reasons for this deferential standard of review are well-established. Congress has mandated this standard of review in sentencing and stated that "the court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. sec. 3742(e) (emphasis added). As a matter of sound jurisprudence, we do not second-guess the sentencing judge because he or she has had the best 'opportunity to observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements,' as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record.

United States v. Garcia, 66 F.3d 851, 856 (7th Cir. 1995) (emphasis added); see United States v. Mancillas, 183 F.3d 682, 701 n.22 (7th Cir. 1999) ("We do not second-guess the [sentencing] judge's credibility determinations. . . .").

The sentencing court's ruling is also consistent with the "willfulness and materiality" elements of perjury. See United States v. Brimley, 148 F.3d 819, 823 (7th Cir. 1998). By rejecting Stokes' claim that he was "confused" by the noise during his arrest and "didn't recall," the court essentially concluded that his testimony was

intentionally false, rather than the result of confusion, mistake or faulty memory. See U.S.S.G. sec. 3C1.1, cmt. (n.2). His perjurious testimony was also material because by claiming at the suppression hearing that he was not Mirandized during his arrest, Stokes was attempting to suppress statements that he made to the police which the prosecution intended to use in their case against him. Indeed,

[a] defendant who testifies at a suppression hearing may be subject to an obstruction of justice enhancement if he or she gives false testimony which is material to the decision whether the contested evidence should be suppressed. Having moved to suppress the evidence, he or she may not later claim that the evidence was not of importance to the government's case.

United States v. Reddrick, 90 F.3d 1276, 1283 (7th Cir. 1996) (emphasis added). Thus, there was a "real and demonstrable connection between [Stokes'] obstructive conduct and . . . the sentencing of the 'instant offense.'" United States v. Perez, 50 F.3d 396, 399 (7th Cir. 1995); U.S.S.G. sec. 3C1.1 (requiring that the obstructive conduct relate to "the defendant's offense of conviction and any relevant conduct"). See also United States v Kiszewski, 877 F.2d 210, 214 (2d Cir. 1989) ("[P]erjury strikes at the heart of the integrity of the judicial system. . . ."). We conclude that the sentencing court's findings were not clearly erroneous and hold that it did not err in assessing the defendant a two-level adjustment for obstruction of justice. See Hickok, 77 F.3d at 1006 ("Perjury is a well-established example of conduct that warrants an enhancement for obstruction of justice.")

IV.  CONCLUSION

     The defendant's conviction and sentence are

AFFIRMED.


/1 This transaction serves as the basis for Counts one and two.

/2 Laboratory tests later revealed that the substance transacted on this occasion contained no illegal substances.

/3 After his arrest, a criminal records check of the defendant revealed that he has been previously convicted in Illinois court of three felonies (each punishable by a term of imprisonment exceeding one year): (1) armed robbery; (2)

possession of a weapon by a felon; and (3) possession of a controlled substance.

/4 The arresting officer testified at trial that at the time of his arrest, Stokes stated that "he didn't mind going back to prison, he didn't care, all police officers are punks and pussies."

/5 The crime of possessing a firearm as a felon requires that the person was "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. sec. 922(g)(1).